The Chancellor.
The hill is filed to foreclose a mortgage for three thousand dollars, given by the defendant to the complainant, bearing date on the first day of May, 1855. The execution of the bond and mortgage are admitted. The defence is, that the loan for which the mortgage was given was originally made by one II. Dayton to the defendant, the consideration received for the mortgage being a draft bearing date on the twenty-first of April, 1855, at six months, for $3001.50; that the cash value of the draft, on the day it was received by the defendant, was but $2908.94; that a portion of the proceeds of the draft was loaned or delivered by Kirkpatrick to Dayton before the execution of the mortgage, upon an express understanding and agreement that it should be returned by Dayton, together with such additional sum as should, with the net proceeds of the draft, amount to $3000, the sum specified in the bond and mortgage; that Dayton failed to pay the money, and that the total amonnt actually received by the defendant, as a consideration for the execution of the said mortgage, was $2308.95. The mortgage was executed to the complainant at Dayton’s request.
*266 Upon this state of facts, the defendant insists that he is liable upon the mortgage only for the amount actually received by him with interest.
The evidence shows that the original negotiation for the loan was exclusively between Dayton and the defendant; but that before the execution of the papers the complainant agreed to accept the bond and mortgage of Kirkpatrick for $3000, as payment of that amount due to him from Dayton. Of this fact the defendant was apprized, and he thereupon agreed with the complainant to give the bond and mortgage directly to him. There is no pretence in the evidence that Dayton, in making the loan, acted as the agent of the complainant ; that he had any participation in or knowledge of the negotiation between Dayton and the defendant touching the consideration passing between them for the mortgage, or that he did not actually allow to Dayton in good faith the full amount for which the mortgage was given.
As against Dayton, if the mortgage was in his hands, the defendant would be entitled to a deduction of the amount withheld in violation of the agreement. The mortgage would be deemed a security for the amount actually advanced upon it, 'and no more. Ex’rs of Howell v. Auten, 1 Green’s Ch. R. 45.
But, this defence is not available against the complainant. The bond and mortgage were given by the defendant directly to the complainant. The complainant paid full value for them. They were received, it is true, to pay a debt of Dayton to the complainant. But if the defendant chose voluntarily to give his bond and mortgage to pay a debt of a third party to the complainant, it surely does not lie in his mouth to object that he did not receive a full consideration for his undertaking. That was a matter entirely between himself and Dayton, and neither want of consideration nor illegality of consideration for the agreement between them can in any wise impair the validity of the bond and mortgage given to the complainant.
It is urged that the position of the complainant is virtually *267 tliat of an assignee, and that, as assignee, he must take the mortgage subject to all the equities subsisting against it in the hands of the original mortgagee.
For the reasons already suggested, there is in reality no analogy between the position of the complainant and that of an assignee. He holds the mortgage not through Dayton, nor under or by virtue of any contract between the mortgagor and Dayton, but as mortgagee by virtue of a contract immediately between himself and the mortgagor.
But if the mortgage had boon originally made to Layton, and by him assigned to Lee, and the complainant were here seeking to recover as assignee, under the evidence in this cause the defence would not be available as against him. As a- general rule, the assignee, it is conceded, takes the mortgage subject to all the equities subsisting against it in the hands of the original mortgagee. He can recover no more than the amount actually due upon the mortgage at the date of the assignment. But if the mortgagor, when applied to for information, conceals liis equitable defence, if ho misleads the party by word or act as to the amount duo upon the bond, nay if he stands silently by and permits a party in good faith to pay his money and take an assignment for its full nominal value, ho cannot afterwards set up his equitable defence against the claim of the mortgagee for the payment of the entire debt. The defendant was applied to by the complainant before be took the mortgage, and apprized that the complainant was about to take it for its full value. If the defendant had any equitable defence against it, be was bound then and there to make it known. He was in a situation where he was bound to speak. His silence was constructively fraudulent. The maxim applies, fraus est celare fmudem. 1 Story’s JSq. Jur., § 384 et seq.
But he not only failed to make known his equitable claim, but he proceeded to execute the mortgage to Lee, who, as he knew, was about to take it for its full value. His conduct operates as an equitable estoppel against enforcing what *268 might otherwise have been his rights as against an assignee. The defence is not sustained.
There must be an order of reference.